IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| H&L AXELSSON, INC., et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>PENNY PRITZKER, et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>      Civil Action<br>No. 13-183 (JBS/KMW)<br><br>      **OPINION** |

APPEARANCES:

Kevin J. Thornton, Esq.
COOPER LEVENSON, P.A.
1125 Atlantic Avenue
Atlantic City, NJ 08401
 - and -
Stephen M. Oullette, Esq.
OUELLETTE LAW OFFICE
127 Eastern Avenue, Suite 1
Gloucester, MA 01930
     Attorneys for Plaintiffs

John Brett Grosko, Esq.
Environment & Natural Resources Division
Wildlife & Marine Resources Section
UNITED STATES DEPARTMENT OF JUSTICE
601 D Street NW
Washington, DC 20004
     Attorney for Defendants

**SIMANDLE, Chief Judge:**

## I.   **INTRODUCTION**[1]

Plaintiffs H&L Axelsson, Inc., Dan Axelsson and Lars Axelsson (collectively, "Plaintiffs" or "the Axelssons") bring this action to reverse and vacate the assessment of fines and penalties against them by the National Oceanographic and Atmospheric Administration ("NOAA"), pursuant to 16 U.S.C. § 1858(b).[2] Plaintiffs, who are commercial fishermen based in Cape May County, N.J., failed to comply with some reporting requirements of the Magnuson-Stevens Fisheries Conversation and Management Act ("MSA" or "the Act"), 16 U.S.C. § 1801, et seq., related to their harvesting of Atlantic herring for a six-month period in 2007. Plaintiffs' failure to make reports about their Atlantic herring catches constituted 27 separate violations of the MSA, for which NOAA fined the Axelssons $270,000 and issued 24 months of permit sanctions. After an administrative hearing,

---

[1] When this matter was docketed, Defendant Rebecca Blank served as Acting Secretary of the U.S. Department of Commerce, and Jane Lubcheno served as Under Secretary of Commerce for Oceans and Atmosphere. In the meantime, Penny Pritzker has assumed the office of Secretary of the U.S. Department of Commerce, and Dr. Kathryn D. Sullivan was confirmed as Under Secretary of Commerce for Oceans and Atmosphere. Under Fed. R. Civ. P. 25(d), an "officer's successor is automatically substituted as a party." The caption here so reflects.

[2] "Any person against whom a civil penalty is assessed under subsection (a) of this section or against whom a permit sanction is imposed under subsection (g) of this section . . . may obtain review thereof in the United States district court for the appropriate district . . . ." 16 U.S.C. § 1858(b). The Court has jurisdiction under this statute and 28 U.S.C. § 1331.

an administrative law judge ("ALJ") suspended the majority of the penalties, and an agency administrator further reduced the fine to $54,000 with no suspended penalties and reduced the outright permit sanction to one month. Plaintiffs now seek judicial review of the ALJ's decision and urge the Court to vacate the assessment of fines. Before the Court are cross-motions for summary judgment, although, in substance, this case is an appeal of an administrative action. [Docket Items 20 & 28.]

Plaintiffs raise three main challenges to the penalties: (1) the ALJ improperly denied Plaintiffs' motion to dismiss based on the Paperwork Reduction Act ("PRA"), 44 U.S.C. §§ 3501, et seq.; (2) the ALJ's decision was not in accordance with governing statutes or agency guidelines; and (3) the excessive fine violated the Eighth Amendment to the U.S. Constitution.[3] Neither party has requested oral argument and these cross-motions are decided upon the submissions of counsel without oral argument pursuant to Rule 78, Fed. R. Civ. P.

---

[3] Plaintiffs also argue that the ALJ improperly permitted the agency to amend its complaint. (Pl. Mot. at 22-23.) The original complaint misstated Lars Axelsson's vessel name in some paragraphs, but also contained accurate references to the vessel name. (R. at AR01690-93.) The ALJ properly permitted the amendment, finding that Plaintiffs were on notice of the charges and the error did not prevent Plaintiffs from preparing their case. (R. at AR001690-92.) This determination was supported by the record and was within the ALJ's discretion, and the Court will not vacate the agency's assessment of penalties on this ground.

For reasons explained below, because the fines do not violate the Eighth Amendment, and because substantial evidence supports the ALJ's ruling, the Court will affirm the agency's assessment of penalties. Reviewing the Paperwork Reduction Act motion on the merits, the Court finds that the agency complied with the statute and accompanying regulations, and therefore the ALJ was correct to deny Plaintiffs' motion to dismiss. Accordingly, the Court will affirm the agency proceedings below, grant Defendants' cross-motion for summary judgment, and deny Plaintiffs' motion for summary judgment.

## II.   BACKGROUND

### A. Facts

The material facts are undisputed.[4] Plaintiffs Dan and Lars Axelsson are owners of H&L Axelsson, Inc., a family-owned commercial fishing operation out of Erma, N.J. The Axelssons

---

[4] Defendants argue that because Plaintiffs' motion for summary judgment was not accompanied by a statement of material facts not in dispute, per L. Civ. R. 56.1, Plaintiffs' motion for summary judgment must be dismissed. (Def. Statement of Material Facts ("SMF") [Docket Item 28-2] at 3 n.2.) However, because this appeal concerns whether the agency's determination was arbitrary or capricious, or otherwise not in accordance with law, and not whether there exists a genuine dispute of material fact, the lack of a L. Civ. R. 56.1 statement is not fatal to Plaintiffs' motion. The "well rehearsed summary judgment standard, as articulated in Fed. R. Civ. P. 56(c), does not apply because the underlying action is an appeal brought under the substantial evidence standard of the APA." Salisbury v. United States, No. 07-4881, 2008 WL 5423487, at *2 n.5 (E.D. Pa. Dec. 30, 2008), aff'd, 368 F. App'x 310 (3d Cir. 2010).

have been fishing for more than 30 years. (SMF ¶ 1.) H&L Axelsson and Dan Axelsson own and operate the fishing vessel known as F/V Dyrsten; H&L Axelsson and Lars Axelsson own and operate the F/V Flicka. (Id. ¶¶ 4, 7.) The Axelssons have fished for a number of heavily regulated species such as bluefish, trout, flounder, mackerel, and others (id. ¶ 2), and hold permits to fish for Atlantic herring. (R. at AR002227, AR002259.)

NOAA's National Marine Fisheries Service ("NMFS") requires permitted Atlantic herring vessels to submit multiple reports about their harvests, known as "landings," in order to monitor fish populations and prevent overfishing.[5] See Atlantic Herring Fishery Management Plan, 65 Fed. Reg. 77,450, 77,450, 77,452 (Dec. 11, 2000) (codified in relevant part at 50 C.F.R. pt. 648); (R. at AR02227). The Atlantic Herring Fishing Management Plan requires permitted fishermen to complete monthly Vessel Trip Reports ("VTRs"), which record fishing efforts, landings and discards on paper forms supplied by a regional administrator. 65 Fed. Reg. at 77,452; 50 C.F.R. § 648.7(b)(1). However, because the processing of these monthly paper reports is slow -- accurate statistics are available only on a 30- to 45-day lag -- the NMFS also requires certain Atlantic herring

---

[5] Federal regulations set target "total allowable catch" levels for different fishes in particular areas of the ocean.

vessels to be equipped with a Vessel Monitoring System ("VMS") unit and to file weekly "Interactive Voice Response" ("IVR") reports by calling a toll-free number and entering data by pressing numbers on a touchtone phone. 65 Fed. Reg. at 77,452; 50 C.F.R. § 648.7(b)(2). Atlantic herring dealers are required to submit weekly reports by mail and may be required to submit weekly IVR reports, if so determined by the regional administrator. 65 Fed. Reg. at 77,452.

Until late 2006, Plaintiffs did not file IVR reports directly with NOAA, but sent their information to Ms. Kohl Kanwit, a researcher who worked for the Maine Division of Marine Resources, who in turn forwarded the Axelssons' data to NOAA. (SMF ¶ 30.) When Ms. Kanwit transitioned out of that job, she sent an e-mail to a group of fishermen, including Plaintiffs, stating: "If you have been e-mailing or calling me with your IVR numbers you will now have to call them in to [NM]FS directly." (R. at AR001094.) Plaintiffs "admit that such an e-mail was sent and may have been received by Lars Axelsson." (Pl. Response to SMF [Docket Item 30-1] ¶ 30.)

Plaintiffs concede that when Ms. Kanwit stopped making IVR reports to NOAA, they did not immediately begin submitting their own reports. (Pl. Resp. to SMF ¶ 36.) Plaintiffs admit that Dan Axelsson failed to submit nine IVR reports between January 10, 2007 and April 4, 2007, arising from the operation of the F/V

Dyrsten (SMF ¶ 4), and Lars Axelsson failed to submit six IVR reports between January 24, 2007 and July 16, 2007, arising from the operation of the F/V Flicka. (SMF ¶ 7; see also Pl. Mot. Br. at 2 (stating that Plaintiffs "do not dispute" that "for a period of time they failed to report their herring landings over the IVR system").) During approximately the same time period, Lars Axelsson did not timely file 12 VTRs. (SMF ¶ 9; see also Pl. Mot. Br. at 2 (admitting "that Lars Axelsson submitted several months worth of VTRs late").) These missing or late reports would have communicated to NMFS that Plaintiffs landed 3.25 million pounds of herring over that period. (SMF ¶ 14.) Plaintiffs contend that the amount of their harvest was nonetheless reported to NOAA in the dealer reports, even if the Axelssons themselves did not directly report the numbers to NOAA in a timely fashion using the IVR reports or the VTRs. (Pl. Resp. to SMF ¶ 14.)

The MSA provides a maximum civil penalty of $140,000 for each violation of the Act or the regulations issued pursuant to the Act. 16 U.S.C. § 1858(a) (setting the civil penalty maximum at $100,000 per violation); 15 C.F.R. § 6.4(f)(14) (adjusting the maximum penalty up to $140,000 per violation, due to inflation). On October 1, 2008, NOAA fined Plaintiffs $270,000 jointly and severally for the 27 violations: $180,000 assessed against H&L and Lars Axelsson for the 18 IVR and VTR violations,

7

and $90,000 against H&L and Dan Axelsson for the nine IVR
reporting violations. (SMF ¶¶ 6, 10, 11.) NOAA also issued
permit sanctions totaling 24 months against the Axelssons. (SMF
¶ 42; Def. Cross-Mot. at 1.)

Plaintiffs requested an administrative hearing to challenge
the penalties. (SMF ¶ 17.) Administrative Law Judge Michael
Devine held a hearing on June 16, 2009.

**B. ALJ's decision**

The ALJ first ruled on Plaintiffs' motion to dismiss, which
was predicated on the Paperwork Reduction Act ("PRA"), arguing
that federal law requires NOAA to "display" certain information
on the forms associated with the collection of information, and
NOAA failed to do so in this case. (R. at AR000223.) Plaintiffs
argued that NOAA's failure to comply with the PRA barred the
agency from enforcing the reporting requirements. (R. at
AR000225.) The ALJ denied the motion for three reasons:

> First, [the Axelssons'] filing of this motion at the
> beginning of the hearing, as a surprise legal issue,
> is in violation of the regulations. 15 C.F.R. §
> 904.240(a)(3). A party has an ongoing affirmative duty
> to supplement its Preliminary Positions on Issues and
> Procedures (PPIP). Id. This includes legal issues in
> dispute. Id. On this basis alone, [the Axelssons']
> Motion to Dismiss should be denied. Additionally, the
> undersigned does not have authority to rule on
> challenges to the validity of Agency regulations. 15
> C.F.R. § 904.200(b). Therefore, the regulations that
> provide for reporting requirements are deemed valid.
> Finally, [the Axelssons'] Motion also lacks merit. . .
> . [T]he Agency did obtain Paperwork Reduction Act
> clearance to collect all the information required to

be submitted for both the FVTR and IVR reporting
systems. Each of these reasons independently supports
denial of the motion to dismiss . . . .

(R. at AR000382.)

Moving to the merits of the case, the ALJ found that the
agency proved the 27 charged violations. (R. at AR000386.) Next,
the ALJ considered each of the statutorily required factors: (1)
the nature, circumstances, extent and gravity of the violations;
(2) the degree of culpability; (3) any history of prior
offenses; and (4) any other matter as justice requires. (Id.,
citing 15 C.F.R. § 904.108(a) and 16 U.S.C. § 1858(a)). As to
the first factor, the ALJ found that the Agency had a valid
concern in preventing overfishing, but "no over-fishing resulted
as a result of Respondents' failure to report." (R. at
AR000388.) Next, the ALJ determined that while no evidence
showed that the Axelssons intentionally failed to report in
order to derive an economic advantage, "their conduct is of
significant concern because a failure of fishermen to provide
timely IVR reports could harm the resource by giving NMFS
insufficient information regarding the point where the fishery
had reached the total allowable catch." (R. at AR000389-90.) As
a result, "a significant penalty is appropriate in this matter."
(R. at AR000390.) The ALJ noted that neither the Axelssons nor
their business had been cited for prior fisheries violations.
(Id.)

The ALJ then considered whether Plaintiffs had the ability to pay, even while noting that a party's inability to pay does not preclude the assessment of a fine. (Id. at AR000390-91.) He recognized that financial evidence showed significant debt, but found that Plaintiffs "would have ability to pay the suggested penalty even if it required selling some of their assets." (R. at AR000390) Specifically, the ALJ found that the corporation had more than $400,000 in cash on hand, and, because the penalties were assessed jointly and severally, the corporation could pay the entire fine. (R. at AR000390-91.) At the same time, the ALJ found that while the corporation has "substantial assets on paper, its repeated net profit losses during the last several years have resulted in financial difficulties and its main equity exist in vessels which have very little actual market value." (R. at AR000392.)

The ALJ concluded that some penalty was required to remove any incentive to commit further violations, but that there was "good cause for reducing the Agency's proposed penalties," because (1) the violations did not result in overfishing or economic gains; (2) Plaintiffs did not intentionally circumvent fishery limits; (3) Plaintiffs cooperated with the Agency in correcting the deficient reports; (4) Plaintiffs had no history of prior offenses; and (5) the corporation was in a weakened financial position. (R. at AR000392-93.) The ALJ reduced the

outright fine to $54,000, suspending the remaining $216,000, which would become immediately due and payable only if Plaintiffs violated the MSA during a two-year probationary period, and reduced the permit sanction to one month, with the remaining sanction suspended for the same probationary period. (R. at AR000394.)

Plaintiffs then petitioned the federal agency for discretionary review. (SMF ¶ 46.) The agency administrator found that the outright penalty of $54,000 was appropriate, but found the suspended sanctions to be "harsh" and "inconsistent with the ALJ's assessment of the circumstances surrounding the violation and the Respondents' financial position." (R. at AR001674.) The administrator found that the deterrence rationale for the suspended penalty did not justify "such a high suspended sanction." (Id.) On December 10, 2012, the administrator entered an order modifying the penalty to $18,000 against Dan Axelsson and H&L Axelsson, jointly and severally, and $36,000 against Lars Axelsson and H&L Axelsson, jointly and severally, for a total of $54,000. (R. at AR001675.) The administrator also directed further inquiry into whether Plaintiffs had violated the MSA while their challenge was pending, and, if not, ordered that no permit sanction be imposed. (Id.) If any of the Plaintiffs violated the MSA, a permit sanction of one month would be imposed. (Id.)

Plaintiffs filed a two-count Complaint in this Court, alleging violations of the Administrative Procedures Act and the MSA (Compl. ¶¶ 12-13), and violations of the Paperwork Reduction Act (Compl. ¶¶ 14-15). The parties have filed cross-motions for summary judgment.

## III. STANDARD OF REVIEW

The MSA expressly incorporates the standard of review in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). See 16 U.S.C. § 1858(b). Under the APA, "the reviewing court shall decide all relevant questions of law" and "interpret constitutional and statutory provisions . . . ." § 706. Agency actions, findings or conclusions are subject to considerable deference and will be set aside if they are (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," (2) "contrary to constitutional right," or (3) "unsupported by substantial evidence." § 706(2)(A), (2)(B) & (2)(E). A decision is "arbitrary and capricious" if the agency (1) relied on facts other than those intended by Congress, (2) failed to consider an important aspect of the issue, (3) provided an explanation for a decision that runs counter to the evidence before the agency, or (4) if the determination is entirely implausible. La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor, --- F.3d ---, No. 12-4030, 2014 WL 444157, at *16 (3d Cir. Feb. 5, 2014) (citing Gardner v. Grandolsky, 585

F.3d 786, 790 (3d Cir. 2009)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Mars Home for Youth v. NLRB, 666 F.3d 850, 853 (3d Cir. 2011) (quoting Citizens Publ'g & Printing Co. v. NLRB, 263 F.3d 224, 232 (3d Cir. 2001)). The reviewing court is not empowered to substitute its judgment for that of the agency. La. Forestry Ass'n Inc., 2014 WL 444157, at *16.

## IV. DISCUSSION

### A. Eighth Amendment

The Eighth Amendment prohibits the imposition of "excessive fines." U.S. CONST. amend. VIII. To comport with the Eighth Amendment, a fine "must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 334 (1998) (citing Austin v. United States, 509 U.S. 602, 622-23 (1993)). A fine is unconstitutional if it is "grossly disproportional to the gravity" of the offense. Id. at 337. The U.S. Supreme Court has observed that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." Id. at 336.

Here, Congress has determined that the maximum acceptable penalty for a single violation of the MSA is $140,000. As modified by the agency administrator, the fine in this case is $2,000 per violation -- approximately 1.4 percent of the maximum

13

penalty.[6] Although the violations here did not result in the
overfishing of Atlantic herring, the Court agrees with the ALJ
that the conduct -- even if merely negligent -- is nonetheless
serious because the failure to provide timely reports could
negatively impact the management and conservation of the herring
population and, consequently, disrupt the economy surrounding
Atlantic herring. While the $54,000 fine is significant, the
fine is not grossly disproportionate to the gravity of the 27
conceded violations of the MSA, nor does the fine amount to an
equivalent of impairing the continued existence of Plaintiffs'
fishing enterprise. Moreover, at a total of $54,000 in fines for
3.25 million pounds of unreported herring catch, the fine
amounts to about 1.66 cents per pound of catch. By any measure,
this fine is not constitutionally objectionable. The Court will
not vacate the penalties on Eighth Amendment grounds.

### B. Substantial evidence supports the agency determination

Plaintiffs argue that the ALJ and the administrator "failed
to properly consider" statutory factors, and Plaintiffs "leave
it to this Court to consider whether it is fair and reasonable,
and consistent with the intent of the Act to assess fines for

---

[6] Plaintiffs argue that the agency's penalty schedule suggests a
penalty of between $5,000 and $80,000 for a first-time
violation. (Pl. Mot. Br. at 8; R. at AR002065.) In any event,
the actual assessed fine in this case for 27 violations was
$2,000 per violation, still significantly below the express
range of acceptable penalties. These fines are not grossly
disproportionate to the gravity of the violations.

technical non-compliance resulting from negligent conduct . . . ." (Pl. Mot. Br. at 9.) Plaintiffs then list the statutory factors to be considered as well as additional factors that may be considered under NOAA's Penalty Schedule (R. at AR002061-62), and discuss each factor. (Pl. Mot. Br. at 10-19.) Plaintiffs argue that the penalties are excessive, that other agencies and other ALJs deal with similar violations differently, and that NOAA knew about Plaintiffs' violations but permitted the late reports and penalties to accrue.[7]

This Court, in reviewing an agency action, does not have the authority to make a de novo determination of whether the assessed penalties are "fair and reasonable," as Plaintiffs seem to suggest (see Pl. Mot. Br. at 9, 19), and the Court is unmoved by whether other ALJs or other agencies may treat violations differently. The scope of this Court's review is to determine

---

[7] The cited portions of the record do not support Plaintiffs' contention that NOAA personnel "allowed the number of violations to amass to the point that the fines became crippling." (Pl. Mot. Br. at 9.) Alison Verry, an NMFS employee, testified that in mid- to late 2007, the agency began to investigate vessels that had not been reporting their herring landings. (R. at AR001786-87), but this testimony is not evidence that the agency was aware of Plaintiffs' reporting errors and decided to allow violations to pile up. An e-mail from October 19, 2007, discusses Plaintiffs' violations (R. at AR002128), but provides no support for the fact that the agency sat idly in order for reporting violations to accumulate between January and July of 2007. The ALJ's findings of fact (R. at AR000420-21) do not support this contention, either.

whether substantial evidence supports the agency's assessment of fines in this particular case.

Here, the ALJ considered each of the statutory factors, as well as other permissible factors, and cited to substantial evidence in his discuss of each factor to support his downward adjustment of the penalties. (R. at AR000387-92.) The ALJ also soundly reasoned that some penalty was required to deter future violations by Plaintiffs or others and to encourage compliance with the MSA and related regulations.[8] (R. at AR000393.) Plaintiffs essentially ask this Court to substitute its judgment for that of the ALJ or the agency administrator, which is improper. La. Forestry Ass'n Inc., 2014 WL 444157, at *16. On this record, there is no justification for the Court to reweigh the evidence. The ALJ performed the analysis ably and supported his decision with evidence that a reasonable mind might accept as adequate to support his conclusions. See Mars Home for Youth, 666 F.3d at 853. Although Plaintiffs believe the adjusted penalty remains excessive, the agency is entitled to deference when substantial evidence informs the assessment of whether a penalty is appropriate. The Court will not vacate the penalty on

---

[8] The administrator did not accept deterrence as a sufficient rationale to support large suspended penalties of $216,000, but agreed that the $54,000 penalty was appropriate. (R. at AR001673-74).

16

the ground that the ALJ or the agency administrator was not in accordance with law.

### C. Paperwork Reduction Act

Plaintiffs also contend that the IVR reporting violations should be dismissed because NOAA did not comply with the requirements of the PRA when it failed to display on the collection of information document the "control number" signifying approval from the Office of Management and Budget ("OMB") and an expiration date for the approved collection of information. See 44 U.S.C. §§ 3507, 3512. The Court reviews the PRA defense de novo, because it presents a pure question of law and because the statute permits the defense to be raised "at any time during the agency administrative process or judicial action applicable thereto." 44 U.S.C. § 3512(b). The Court finds that the ALJ correctly denied Plaintiffs' motion to dismiss, but this Court finds the denial proper for a different reason than that expressed by the ALJ.[9] On the merits of the PRA challenge, the

---

[9] Ordinarily, "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); see also Zhen Hua Li v. Att'y Gen., 400 F.3d 157, 163 (3d Cir. 2005). However, "the Supreme Court has explained that 'Chenery does not require that [the Court] convert judicial review of agency action into a ping-pong game' and that remand to the agency is not required when it 'would be an idle and useless formality.'" Li Hua Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969)). In Li Hua Yuan, the Third Circuit

Court finds that the agency did "display" the OMB control number within the meaning of the regulations promulgated pursuant to the PRA. Therefore, the agency did not violate the PRA, and the ALJ reached the correct outcome by denying Plaintiffs' motion to dismiss, for the reasons now discussed.

### 1. Statutory scheme & background

Under the PRA and related regulations, each "collection of information" by an agency must display a "control number" issued by the OMB, signifying the OMB's approval of the agency's request to collect information. 44 U.S.C. §§ 3506(c)(1)(B) & 3512; 5 C.F.R. § 1320.5(b). To obtain OMB approval, an agency must demonstrate that "it has taken every reasonable step to ensure that the proposed collection of information" is the

---

adopted a harmless error standard for review of administrative decisions in immigration cases, "when it is highly probable that the error did not affect the outcome of the case." Id. at 427.

Here, the PRA expressly authorizes the statutory defense to be raised at any time, including during a judicial action applicable to an agency proceeding. Thus, this is not a case where Congress exclusively granted the agency the authority to make determinations about a statute. Nor is this a case where the Court is substituting its own judgment of the record for that of the agency. The question presented is purely legal, and does not depend on findings of disputed facts or weighing of the evidence, which is properly the domain of the agency. The statutory and regulatory scheme of the PRA, as the Court will explain, leaves no room for the agency's judgment or discretion when applying the law to the facts of the case. "There is not the slightest uncertainty as to the outcome of a proceeding before the [agency] . . . . It would be meaningless to remand." Wyman-Gordon Co., 394 U.S. at 766 n.6. Therefore, the Court will review the merits of the PRA defense and, as explained herein, affirm the ALJ's determination that the agency complied with the PRA.

"least burdensome necessary," is "not duplicative of information otherwise accessible to the agency," and is useful. 5 C.F.R. § 1320.5(d)(1). One purpose of the PRA is to "minimize the paperwork burden" on those regulated by the federal government. 44 U.S.C. § 3501(1).

> A "collection of information" is defined in the PRA as
>
> the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for . . . answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the United States . . . .

44 U.S.C. § 3502(3)(A)(i). The regulations clarify that the phrase "'collection of information' refers to the act of collecting or disclosing information, to the information to be collected or disclosed, to a plan and/or an instrument calling for the collection or disclosure of information, or any of these, as appropriate." 5 C.F.R. § 1320.3(c). The regulations continue: "A 'collection of information' may be in any form or format, including the use of . . . instructions; . . . automated, electronic, mechanical, or other technological collection techniques; . . . or any other techniques or

technological methods used to monitor compliance with agency requirements." 5 C.F.R. § 1320.3(c)(1).[10]

The implementing regulations specify that "an agency shall not conduct or sponsor a collection of information" unless (1) "the collection of information displays a valid OMB control number," and (2) the agency informs "the potential persons who are to respond to the collection of information that such persons are not required to respond to the collection of information unless it displays a valid OMB control number." 5 C.F.R. § 1320.5(b); 44 U.S.C. § 3512(a). When the collections of information are published in the Federal Register or in the Code of Federal Regulations, regulations permit the agencies to satisfy the "display" requirement by publishing the OMB control number, as well as the notification about responding information, in the Federal Register or the Code of Federal

---

[10] Defendants refer to the phrase "information collection request" in their motion (Def. Cross-Mot. at 32), but that phrase was eliminated from 44 U.S.C. § 3502(11) in 1995 when Congress amended the PRA. S. Rep. No. 104-8, at 37 (1995) ("the present definition of 'information collection request' in section 3502(11), and all its uses in current law are deleted"). According to the Senate Report, the deletion of "information collection request" was for the sake of "clarity and consistency" and to eliminate confusion between that phrase and "collection of information." Id. at 37-38. New confusion, however, appears to have arisen, because the term "collection of information" refers to both the act of collecting information as well as instruments calling for the collection or disclosure of information, such as "application forms," "questionnaires," "surveys," "directives," and "instructions," among others. 5 C.F.R. § 1320.3(c)(1).

Regulations. See 5 C.F.R. §§ & 1320.3(f)(3) & 1320.5(b)(2)(ii)(C).[11]

An agency's failure to display this required information is a "complete defense" to any alleged liability for failing to comply with a collection of information. 44 U.S.C. § 3512(a)-(b). "The protection provided by this section may be raised in the form of a complete defense, bar or otherwise at any time during the agency administrative process or judicial action applicable thereto." § 3512(b) (emphasis added).

In this case, NOAA obtained OMB approval for the collection of IVR information. In NOAA's application, the agency sought permission "not to display the expiration date for OMB approval

---

[11] Although the word "display" is not defined in the PRA, the regulations specify that "display" means,

> [i]n the case of collections of information published in regulations, guidelines, and other issuances in the Federal Register, to publish the currently valid OMB control number in the Federal Register (for example, in the case of a collection of information in a regulation, by publishing the OMB control number in the preamble or the regulatory text for the final rule, in a technical amendment to the final rule, or in a separate notice announcing OMB approval of the collection of information). In the case of a collection of information published in an issuance that is also included in the Code of Federal Regulations, publication of the currently valid control number in the Code of Federal Regulations constitutes an alternative means of "display."

5 C.F.R. § 1320.3(f)(3). The regulations add a similar provision for the notification about the need to respond if the OMB control number is not displayed. See 5 C.F.R. § 1320.5(b)(2)(ii)(C).

of the information collection." (R. at AR000256.) The agency
wrote:

> Because part of this collection involves an IVR system
> and not a written form, there is no form on which to
> display an expiration date. However, an expiration
> date will be displayed in the instructions and/or
> cover letter that will be mailed to each permit holder
> who is required to report purchased through the IVR
> system. All logbook forms will display the OMB Control
> number and expiration date along with information
> relevant to the PRA.

(Id.) The OMB approved the application "WITHOUT CHANGES." (R. at
AR000242.) NOAA published the OMB control number ("0648-0212")
in the Federal Register. 65 Fed. Reg. at 77,463 (listing "Vessel
trip reports, OMB control number 0648-0212 (5 minutes/response)"
and "Interactive voice response system reports, OMB control
number 0648-0212 (4 minutes/response)," as well as the required
warning about the consequences of the failure to display the
control number). The OMB control number also was displayed in
the Code of Federal Regulations. See 15 C.F.R. § 902.1(b)
(matching the "CFR part or section where the information
collection requirement is located" with the "Current OMB control
number," including 50 C.F.R. §§ 648.4, 648.7, 648.14 & 648.85
with control number 0648-0212). These "displays" of the control
number and warning complied with the PRA as discussed below in
Part IV.B.3.

Periodically, the NMFS sent Plaintiffs letters enclosing
instructions for reporting Atlantic herring landings using the

22

IVR system, including letters on May 1, 2006, and May 1, 2007.
(See R. at AR002246-57, AR002278-82.) The cover letters and
related worksheets did not contain the OMB control number. (Id.)

At the beginning of the hearing before the ALJ, Plaintiffs
filed a motion to dismiss based on a violation of the PRA. The
ALJ denied the motion to dismiss because (1) the request was
untimely under NOAA procedural regulations, (2) the ALJ did "not
have authority to rule on challenges to the validity of Agency
regulations," and (3) the agency obtained clearance to collect
the VTR and IVR information. (R. at AR000382.) On the merits,
the Court finds that NOAA complied with the PRA in this case,
and therefore ALJ was correct to deny the motion to dismiss.
However, the Court pauses to address the reasoning of the ALJ,
with which the Court disagrees.

### 2. The ALJ's rationales for denying the motion to dismiss

The ALJ first denied the motion to dismiss because it was
not filed until the day of the hearing and presented a "surprise
legal issue" in violation of 15 C.F.R. § 904.240(a)(3), which
imposes an affirmative obligation on a party to supplement a
written "preliminary position on issues and procedures" document
submitted to the ALJ "as available information or documentation
relevant to the stated charges or defenses becomes known to the
party." The ALJ erred in denying the motion on timeliness

grounds because (1) the plain language of the PRA unambiguously states that the PRA may be raised as a defense "at any time during the agency administrative process or judicial action applicable thereto," 44 U.S.C. § 3512(b) (emphasis added), and (2) the U.S. Court of Appeals for the D.C. Circuit, which is highly persuasive on issues related to federal agency law, has rejected similar timeliness objections to PRA defenses. See Saco River Cellular, Inc. v. FCC, 133 F.3d 25, 31 (D.C. Cir. 1998) (stating that the PRA "prevents an agency or court from refusing to consider a PRA argument on the ground that it is untimely" and requires an agency or court to "entertain arguments that would otherwise have been barred . . . by the proponent's failure to have made the argument at an earlier stage in the administrative or judicial process"); Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 244 F.3d 144, 150 (D.C. Cir. 2001) (reading the PRA expansively, extending the holding in Saco River, and holding that "a Paperwork Reduction Act claim can be raised after information has been submitted"); see also Springer v. C.I.R., 580 F.3d 1142, 1145 n.2 (10th Cir. 2009) (quoting Saco River for the proposition that the PRA obligates federal agencies to entertain PRA arguments that would have been barred by the proponent's failure to have made the argument at an earlier stage in the administrative process).[12]

---

[12] Moreover, an agency "cannot rely on one of its own regulations

The ALJ offered a second reason to deny the motion to dismiss: "the undersigned does not have authority to rule on challenges to the validity of Agency regulations. 15 C.F.R. § 904.200(b). Therefore the regulations that provide for reporting requirements are deemed valid." (R. at AR000382.) Section 904.200(b) states that the ALJ "has no authority to rule on constitutional issues or challenges to the validity of regulations promulgated by the Agency or statutes administered by NOAA."

Plaintiffs' motion to dismiss does not implicate the subsection cited by the ALJ. The motion challenged NOAA's compliance with a federal statute that dictates what information must be displayed with a collection of information, not the validity of regulations promulgated by the agency themselves. (See R. at AR00223-25.) Holding that NOAA failed to comply with the PRA would not necessarily invalidate the regulations themselves. Therefore, Section 904.200(b) does not provide grounds for denying the motion to dismiss.

Finally, the ALJ stated that the motion to dismiss "lacks merit" because "the Agency did obtain Paperwork Reduction Act clearance to collect all the information required to be submitted for both the FVTR and IVR reporting systems." (R. at

---

to trump the plain meaning of a statute." Atl. City Elec. Co. v. FERC, 295 F.3d 1, 11 (D.C. Cir. 2002).

AR000382.) Although it is true that the agency received approval, gaining OMB approval for a collection of information does not relieve the agency from the duty of having to comply with the terms of the PRA regarding display. An agency could not obtain a control number to display if it did not receive OMB approval. Therefore, this was an incorrect basis for finding PRA compliance.

### 3.  The merits of the PRA defense

Regardless, because the PRA permits a proponent to raise a PRA defense "at any time during the agency administrative process or judicial action applicable thereto," and because Plaintiffs renew their request to have the merits of their PRA defense heard (Pl. Mot. Br. at 6; Pl. Opp'n at 10), the Court will consider the merits of this argument. Although the Court agrees with the ALJ that the PRA defense fails, the Court so holds because the agency complied with the PRA and accompanying regulations. Any flaw in the ALJ's reasoning was harmless error, and remanding this matter to the ALJ to rule upon this pure legal question, about which there cannot reasonably be disagreement, would be a meaningless exercise in formality. (See supra n.9.)

Plaintiffs argue that the OMB control number must "be set forth in the collection document," and because NOAA did not display the control number on the permit holder letters, the

26

agency failed to comply with the PRA. (Pl. Mot. Br. at 6-8.)
Plaintiffs further state: "It may seem a minor technical
failure; however Congressional intent is clear that the failure
to <u>display</u> a valid OMB number and warning on every information
request, including IVR requests, precludes any fine or penalty
for the IVR violations." (Pl. Opp'n [Docket Item 30] at 11)
(emphasis in original). Plaintiffs raise this argument as a
complete defense to the IVR reporting violation penalties, under
44 U.S.C. § 3512.

     In this case, however, the agency did "display" the OMB
control number and warning, as that term is defined in the
federal regulations. For collections of information published in
the Federal Register or the Code of Federal Regulations, as is
the case here, agencies satisfy the "display" requirement by
publishing the control number and warning "in the preamble or
the regulatory text for the final rule, in a technical amendment
to the final rule, or in a separate notice announcing OMB
approval of the collection of information." 5 C.F.R. §
1320.3(f)(3); 5 C.F.R. § 1320.5(b)(2)(ii)(C). Publication in the
Code of Federal Regulations is "an alternative means of
'display.'" 5 C.F.R. § 1320.3(f)(3); 5 C.F.R. §
1320.5(b)(2)(ii)(C). Here, NOAA published the OMB control number
and warning in the IVR regulatory text published in the Federal
Register and republished the control number in the Code of

27

Federal Regulations. See 65 Fed. Reg. at 77,463; 15 C.F.R. §
902.1(b). The agency also displayed the OMB control number and
expiration date on the VTR form (R. at AR002215) -- the only
paper form associated with the collection of information that
must be returned to NOAA -- which is the same control number as
the IVR collection control number.

     Plaintiffs offer no argument for why this publication of
the OMB control number and warning does not satisfy the display
requirements of the PRA, in light of 5 C.F.R. § 1320.3(f)(3) and
5 C.F.R. § 1320.5(b)(2)(ii)(C). That the agency did not
republish the information on the permit holder letters or
instructions is of no import because the agency complied with
the statute as defined in the federal regulations. Therefore,
Plaintiffs' motion to dismiss was properly denied.

**V.    CONCLUSION**

     The agency's determination of fines and permit sanctions
was adequately supported by the record, consistent with
governing statutes and regulations, and did not violate the
Eighth Amendment. The Court also finds that the PRA defense
fails on the merits, and therefore denial of the Plaintiffs'
motion to dismiss was proper. The Court affirms the agency
determination of penalties, grants Defendants' cross-motion for

summary judgment, and denies Plaintiffs' motion for summary

judgment. An accompanying Order will be entered.


**April 15, 2014**                          **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             Chief U.S. District Judge